Kevin T. Lafky, OSB #852633
klafky@lafky.com
Haley Percell, OSB#05345
hpercell@lafky.com
LAFKY & LAFKY
429 Court Street NE
Salem, OR 97301
Tel: (503)585-2450
Fax: (503)585-0205
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THOMAS EVANS, | ) Case No._____ |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT - VIOLATION OF 42** |
| | ) **U.S.C. § 1983** |
| LINN COUNTY SHERIFF'S OFFICE, | ) |
| TIM MUELLER, BARRY BAGGETT, & | ) |
| PAUL TIMM | ) |
| | ) |
| Defendants. | ) |
| | ) (Jury Trial Requested) |
| | ) |

Plaintiff alleges:

## JURISDICTION

1.

Jurisdiction with respect to Plaintiff's 42 U.S.C. § 2000e claims, is conferred upon this

Court by 28 U.S.C. § 1331.  Plaintiff requests a jury trial in this matter.

## SUPPLEMENTAL JURISDICTION

2.

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

Page -1-COMPLAINT

U.S.C. § 1367.

## VENUE

3.

Venue is appropriate in this Court under 28 U.S.C. § 1391 because Defendants are located in, and the events giving rise to this complaint occurred in, Linn County, Oregon.

4.

Plaintiff is a resident of Linn County, Oregon.

5.

At all relevant times, Plaintiff was employed by Defendant Linn County Sheriff's Office, an agency of the government of Linn County ("Sheriff's Office").  Upon Plaintiff's information and belief, Linn County employed more than five hundred employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.

Plaintiff has exhausted all administrative remedies necessary to proceed on his 42 U.S.C. § 1983 claims.  Plaintiff timely filed an appeal to the Sheriff's Office and the Linn County Board of Commissioners, both of which refused to accept, deny or acknowledge Plaintiff's appeals.

## FACTUAL ALLEGATIONS

7.

Plaintiff started his employment with Sheriff's Office on July 1, 1990. He worked as a Corrections Deputy until August 1997, when he moved to the Programs Division as a Classification Officer and Officer in charge of Inmate Workers.  On November 1, 1997, Plaintiff

was promoted to Corporal/Sergeant and was Work Crew Supervisor. Plaintiff developed and implemented the Classification and Work Crew Programs. On October 15, 2004, Plaintiff was promoted to 1st Sergeant. Throughout his employment, Plaintiff received above-average and exceptional performance evaluations and commendations from Sheriff's Office.

8.

On July 13, 2008, Ken Stewart ("Stewart"), Plaintiff's subordinate, called Plaintiff regarding a Search and Rescue ("SAR") evidence search. Stewart and another group member were going on a search authorized by the Sheriff. This search was made out of the normal chain of command. Plaintiff informed Stewart that he was acting outside the normal chain of command.

9.

The following day, July 14, 2008, before a SAR meeting, Stewart approached Plaintiff in the mail room of the Linn County Sheriff's Office. Stewart said he wanted to speak with Plaintiff. Plaintiff informed Stewart that he did not want to discuss the July 13, 2008, SAR evidence search and attempted to exit the area, telling Stewart, "there was nothing to talk about," and that the matter was over.

10.

Stewart refused to drop the matter and followed Plaintiff into the hallway stating "I want to talk about this man to man." Plaintiff again told Stewart "there was nothing to talk about." Stewart then threatened to "go to the Sheriff" to discuss the matter. Plaintiff informed Stewart that Stewart was free to go to the Sheriff. Plaintiff then asked Stewart what Stewart felt he needed to go to the Sheriff to discuss. Donna Randall ("Randall") then entered the hallway and

interrupted the conversation.  Plaintiff asked Randall not to interfere.

11.

Plaintiff again asked Stewart what he felt the problem was and Stewart then moved close to Plaintiff, pointed his finger in Plaintiff face, and said "I'm not going to take your crap." Plaintiff, for the third time, asked Stewart what he was referring to and Stewart stated "you talked down to me on the phone and hung up on me." Stewart was referring to the phone conversation on July 13, 2008, regarding the SAR evidence search.

12.

Stewart told Randall that he was not staying for the meeting.  Plaintiff then told Stewart if Stewart wanted to get everything off his chest, Plaintiff would take the time to listen to him. Stewart approached Plaintiff and repeated that he felt Plaintiff had talked down to him during the phone conversation of July 13, 2008, and had hung up on him.  Plaintiff told Stewart that he felt people needed to learn their chain of command; however, if the Sheriff had instructed Stewart to go to the search, then Stewart was right to do what he was instructed.  Plaintiff also told Stewart that Stewart should have stopped pursuing Plaintiff when he wanted to keep talking.  Plaintiff stated that threatening to go to the Sheriff was like "running to daddy because you are mad at your brother."  Stewart then left the Sheriff's office.

13.

Plaintiff returned to the SAR meeting with Randall and made the comment "back in the day, when I was younger, I would have throttled Stewart for putting his finger in my face like he had." The comment was not made in Stewart's presence.  A few minutes later, Plaintiff left the meeting and called Stewart to resolve the matter.

Page -4-COMPLAINT

14.

On July 14, 2008, Plaintiff resigned from the SAR program. On July 15, 2008, Captain Paul Timm ("Timm") issued a memorandum placing Plaintiff on administrative suspension without pay, pending an investigation into the confrontation that occurred between Plaintiff and Stewart on July 14, 2008. Captain Barry Baggett ("Baggett") was present when the memorandum was issued. Plaintiff was required to remain at his residence during normal duty hours unless an appropriate leave request had been approved.

15.

On July 16, 2008, Plaintiff was interviewed by Timm and Baggett. On August 13, 2008, Plaintiff was called in for a second interview at the request of Undersheriff Will McAnulty ("McAnulty") with Timm and Captian Vian ("Vian"). In this interview, false allegations were made about Plaintiff's work performance.

16.

On August 21, 2008, Plaintiff received a call from Baggett informing Plaintiff disciplinary actions would be imposed and disciplinary action would be served on Plaintiff on August 26, 2008. Plaintiff requested a hearing and Baggett denied his request.

17.

On August 26, 2008, Plaintiff reported to Sheriff Mueller's Office and was served disciplinary papers in a meeting with Baggett, Timm, and Vian. The disciplinary papers stated that Plaintiff had violated Sheriff's Office Policy, Ethical Standards 03.02.01 (specifically standard 2.1, 4.10 and 4.11) and LCP 20.016 of the Linn County Personnel Policy Manual. Plaintiff objected to the content of the papers and refused to sign them. Plaintiff again requested

a hearing regarding the matter. Plaintiff was informed that there would be no hearing but that Plaintiff had 10 days to appeal.

18.

On August 29, 2008, Plaintiff delivered to the Linn County Sheriff's Office an appeal letter.

19.

On September 2, 2008, Plaintiff was diagnosed with stress disorder related to this investigation and work conditions. On September 4, 2008, Plaintiff submitted a request for time off under the Family Medical Leave Act ("FMLA").

20.

On September 18, 2008, Plaintiff was given a copy of the appeal results and was presented a Performance Correction Notification which ordered that he receive a written reprimand, reduction in rank, and be placed on 12 months probation, together with removal from his position in the Programs Division and reassignment to work in the jail facility in the Corrections Division. This notification stated that Plaintiff had violated Sheriff's Office Policy, Ethical Standards 03.02.01 and LCP 20.016(B) of the Linn County Personnel Policy Manual.

21.

On September 23, 2008, Plaintiff requested a hearing on this matter to contest the charges and that hearing has been denied. On October 28, 2008, Plaintiff appealed to the Linn County Commissioners Office, pursuant to Linn County Personnel policy, to hear his employment grievance. They have not responded. To date, Plaintiff has not had a hearing in this matter.

22.

Sheriff's Office Policy, Ethical Standards 03.02.01, under which Plaintiff was disciplined, states in part: "Peace Officers under investigation for an alleged violation of any of these standards or Sheriff's Office rules shall be afforded, as a minimum, the rights established by law...".  Plaintiff was not afforded the rights established under the Linn County Code.

23.

Linn County has adopted by ordinance a PERSONNEL POLICY CODE, (the "Code") codified as Chapter 310 of the Linn County Code.  Pursuant to LC 310.100 of the Code, which directs Linn County to "adopt and maintain . . . policies designed to provide for personnel administration governing the appointment, promotion, transfer, layoff, discipline, and removal of county employees on the basis of merit and fitness," Linn County adopted the Linn County Personnel Policy Manual (the "Manual").

24.

Under LCP 20.024(b) of the Manual, Plaintiff's position is "entitled to and governed by all provisions" of the Manual.

25.

Under LCP 20.012(A)(13) of the Manual, the maximum allowable disciplinary probation period is six months.  Plaintiff was placed on probation for 12 months.

26.

Under LCP 20.1000 of the Manual, Plaintiff cannot be subjected to discipline unless he is first notified in writing of the reasons for that action and has a full opportunity to refute or answer the reasons "in a pre-decision hearing before the appointing authority." The appointing

Page -7-COMPLAINT

authority is Sheriff Mueller. Plaintiff was not and has not been given a full opportunity to refute or answer the charges against him in a pre-decision hearing before Sheriff Mueller.

27.

Before Plaintiff returned from medical leave, Plaintiff requested to assume a work crew deputy's position. Shortly afterPlaintiff made this request, Plaintiff's doctor, Dr. Tim McCarley, contacted Mueller and requested that Plaintiff not work in the jail around the inmates. Dr. McCarley informed Mueller that Plaintiff had developed a pronounced stutter as a result of Plaintiff's severe depression and anxiety. Dr. McCarley expressed concern that the inmates would view the stutter to be a weakness and taunt Plaintiff. Mueller refused to transfer Plaintiff and Plaintiff continued to work with the inmates. Plaintiff was in fact taunted by the inmates.

28.

Plaintiff has twice attempted to transfer to a day-shift position per the instructions of Dr. McCarley upon return from medical leave. For both transfers, Plaintiff was willing to step down to a deputy position even though Plaintiff was a sergeant. Plaintiff's first attempted transfer was denied because Mueller informed Plaintiff that Stewart would be Plaintiff's supervisor, and did not feel that Plaintiff could work with Stewart. Vian denied Plaintiff's second attempted transfer because Plaintiff was on probation and was told that he could not have a preferential day-shift schedule. For both positions, only one other applicant applied and was given the position over Plaintiff.   _____

///

///

///

Page -8-COMPLAINT

# FIRST CLAIM AGAINST THE LINN COUNTY SHERIFF'S OFFICE, SHERIFF TIM MUELLER AND CAPTAIN BARRY BAGGETT – VIOLATION OF 42 U.S.C. § 1983 (DUE PROCESS)

29.

Plaintiff realleges paragraphs 1-28. 42 U.S.C. § 1983 provides that a party shall be liable when it "subjects, or causes to be subjected, any person of the United States . . . deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

30.

At all times material to this complaint, Mueller, Baggett, and Timm acted or purported to act in the performance of official duties under state, county or municipal law, ordinances or regulations. Defendants' violation of Plaintiff's federal rights was attributable to the enforcement of Linn County Sheriff's Office "policy, custom, or practice" including, but not limited to, the taking of Plaintiff's property without due process.

31.

Plaintiff has over 18 years of service with the Linn County Sheriff's Office and 4 years as a 1st Sergeant. Plaintiff was demoted and deprived of his rank without due process. Plaintiff's property right to his employment was taken away in violation of Plaintiff's due process rights.

32.

Mueller, Baggett, and Timm misused their official powers with a willful and malicious intent to deprive Plaintiff of his due process rights and cause him grievous injuries thereby. The constitutional right to Due Process under the Fourteenth Amendment was well established at the time Mueller, Baggett, and Timm took the aforementioned actions against Plaintiff. Mueller, Baggett,

and Timm, in acting to deprive Plaintiff of his due process rights, acted intentionally, knowingly, willfully, and with gross disregard to Plaintiff's rights.

33.

Mueller, Baggett, and Timm's actions towards Plaintiff, as alleged in the above mentioned paragraphs, constitute a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief.  The violations of 42 U.S.C. § 1983 by Meuller, Baggett, and Timm  resulted in Plaintiff being deprived of his rights, privileges, or immunities secured by the Constitution and laws of the United States.

34.

As a result of Defendants' violations of 42 U.S.C. § 1983, Plaintiff has suffered economic damages in an amount to be determined at trial along with non-economic damages in an amount to be determined at trial.  Plaintiff seeks recovery of all compensatory and punitive damages provided by law, in addition to equitable relief and his reasonable attorney fees and costs pursuant to 21 U.S.C. § 1983. Plaintiff seeks recovery of his reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM–INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS (Special Relationship)

35.

Plaintiff realleges paragraphs 1-34.  Plaintiff had an employer-employee relationship with the Linn County Sheriff's Office.  Defendants knew that the aforementioned conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result.

36.

Defendants' actions described herein were intentional and caused Plaintiff severe mental or emotional distress in the form of foreseeable highly unpleasant emotional reactions including fright, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

37.

The aforementioned continuing actions of Defendant consisted of an extraordinary transgression of contemporary standards of civilized conduct toward an employee.

38.

As a result of Defendant's intentional actions, Plaintiff has suffered economic and non-economic damages in an amount to be determined at trial. Plaintiff requests punitive damages for Defendant's conduct.

### THIRD CLAIM–NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

39.

Plaintiff realleges paragraphs 1-38. Defendant negligently engaged in the aforementioned actions causing severe mental or emotional distress in the form of fright, grief, shame, humiliation, embarrassment, anger, disappointment, worry, and physical illness.

40.

The aforementioned actions of defendant consisted of an extraordinary transgression of contemporary standards of civilized conduct toward a person in the work environment.

41.

As a result of Defendant's reckless actions, Plaintiff has suffered economic and non-economic damages in an amount to be determined at trial. Plaintiff requests punitive damages for

Defendant's conduct.

WHEREFORE, Plaintiff requests the following for his claims for relief:

1. For Plaintiff's First Claim For Relief: Plaintiff seeks recovery for economic damages in an amount to be determined at trial along with non-economic damages in an amount to be determined at trial. Plaintiff seeks recovery of all compensatory and punitive damages provided by law, in addition to equitable relief and his reasonable attorney fees and costs pursuant to 21 U.S.C. § 1983.

2. For Plaintiff's Second Claim For Relief: Plaintiff requests economic and non-economic damages in an amount to be determined at trial. Plaintiff requests punitive damages for Defendant's conduct.

3. For Plaintiff's Third Claim For Relief: Plaintiff requests economic and non-economic damages in an amount to be determined at trial. Plaintiff requests punitive damages for Defendant's conduct.

DATED this 10th day of February, 2009.

s/ Kevin T. Lafky
Kevin T. Lafky        OSB #85263
LAFKY & LAFKY
429 Court St. NE
Salem, Oregon 97301
503-585-2450
Attorney for Plaintiff

Page -12-COMPLAINT